**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Mobilization Funding II, LLC, | Case No. 9:24-cv-03592-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff, Barbara Stokes, Scott Stokes, GSH of Alabama, LLC, | |
| Defendants, | |
| Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff, | |
| Counter-Plaintiffs, | |
| v. | |
| Mobilization Funding II, LLC, | |
| Counter-Defendant, | |
| GSH of Alabama, LLC, Barbara Stokes, Scott Stokes, | |
| Counter-Plaintiffs, | |
| v. | |
| Mobilization Funding II, LLC, Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff, | |
| Counter-Defendants, | |
| GSH of Alabama, LLC, Barbara Stokes, Scott Stokes, | |
| Third-Party Plaintiffs, | |
| v. | |
| Westerfeld Construction by Glick, LLC, | |
| Third-Party Defendant. | |

1

Before the Court are Plaintiff's motions to dismiss the counterclaims of the Jessup Counter-Plaintiffs (Dkt. No. 18) and the GSH Counter-Plaintiffs (Dkt. No. 25). The GSH Counter-Plaintiffs responded to Plaintiff's motion. (Dkt. No 29). The Jessup Counter-Plaintiffs did not respond. For the reasons set forth below, Plaintiff's motion to dismiss the counterclaims of the Jessup Counter-Plaintiffs is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion to dismiss the counterclaims of the GSH Counter-Plaintiffs is **DENIED**.

## I.     Background

This suit arises from a commercial loan agreement extended by Plaintiff to Defendant Jessup Construction with a principal amount of $5,820,106.00 on December 16, 2021. Defendant Jessup was retained as a subcontractor by Third-Party Defendant and contractor Westerfeld Construction by Glick ("WCBG") as part of work to construct disaster housing and rehabilitative efforts for the State of Florida. (Dkt. No. 19 at 17). Pursuant to the Rebuild Florida Project, Defendant Jessup Construction entered into a Joint Venture with Defendant GSH, a manufacturer of "customizable, environmentally friendly, and energy-efficient modular homes and manufactured housing units." (Dkt. No. 18, ¶¶ 1, 5). As security for the loan, Defendants GSH, Barbara and Scott Stokes (as owners of Defendant GSH) and Anthony Setliff and Kimbery Setliff (as owners of Defendant Jessup Construction) each individually guaranteed the satisfaction of all obligations arising under the loan. (Dkt. No. 1-1, Exs. D, E, F, G, H).

Plaintiff alleges that Defendants "defaulted under the Laon Documents by, *inter alia*, failing to pay all amounts due, including without limitation principal and interest, in accordance with the terms of the Note and all other applicable Loan Documents." (*Id.*, ¶¶ 19-20). Plaintiff

seeks to enforce the collection of the debt owed by Defendant Jessup and the guarantees by the Defendant Guarantors. (*See generally id.*).

The GSH and Jessup Defendants allege various counterclaims against Plaintiff in their respective Answers. (Dkt Nos. 5, 19). Plaintiff moves to dismiss the Jessup Counter-Plaintiffs' counterclaims of negligence, interference with contractual relationship, breach of fiduciary duty and breach of contract (Dkt. No. 18) and the GSH Counter-Plaintiffs' counterclaims of breach of contract, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), breach of fiduciary duty and fraudulent concealment (Dkt. No. 25 at 4).

## II.    Legal Standard

Fed. R. Civ. P. 12(b)(6) permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 1980).  However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the

3

complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III.    Discussion

### A.  Counterclaims of the Jessup Counter-Plaintiffs

Plaintiff moves to dismiss the counterclaims of the Jessup Counter-Plaintiffs, arguing they "are bare and conclusory because they have failed to do anything more than recite the legal elements for each claim." (Dkt. No. 18 at 5). The Court considers each claim in turn.

### 1.  Negligence

The Jessup Counter-Plaintiffs recite the elements of a negligence claim under South Carolina law, but nowhere allege what duty Plaintiff owed to them nor how it allegedly breached that duty. This is insufficient to provide Plaintiff with notice of the claim against it. The negligence counterclaim is **DISMISSED WITHOUT PREJUDICE**.

### 2.  Interference With Contractual Relationship

The Jessup Counter-Plaintiffs vaguely allege that "Plaintiff knew of the Defendants' contracts with contractors working on the Project" and "intentionally interfered with these contracts to procure the contractors' breach of their contracts with Defendant." (Dkt. No. 5, ¶¶ 65-68). The Jessup Counter-Plaintiffs do not allege facts as to which the alleged contracts were breached, the circumstances constituting such a breach, or the relevant contracting counterparties

4

are. This is insufficient to provide Plaintiff with notice of the claim against it. The interference with contractual relationship counterclaim is **DISMISSED WITHOUT PREJUDICE**.

### 3. Breach of Fiduciary Duty

The Jessup Counter-Plaintiffs allege that "[u]nder the Funds Control Agreement and through Plaintiff's access to financial accounts of the Defendants prior to the Funds Control Agreement, Plaintiff owed a fiduciary duty to the Defendants" and breached those duties by interfering with the payment of contractors. (*Id.*, ¶¶ 49-60, 69-71). Arguing for dismissal of this claim, Plaintiff highlights that South Carolina "has not designated the general contractor – construction lender relationship as a fiduciary one." (Dkt. No. 18 at 9) (quoting *Vercon Constr., Inc. v. Highland Mortg. Co.*, C/A No. 3:03–1370–JFA, 2005 WL 6158875, at *5 (D.S.C. July 21, 2005) (internal citations omitted)). Plaintiff further contends that "[t]he Jessup Defendants have failed to allege any facts that support a fiduciary duty was created, or that Mobilization Funding accepted any such duty" such that Defendants' counterclaim should be dismissed.

At this stage, the Jessup Counter-Plaintiffs have alleged sufficient facts to plausibly allege that Plaintiff owed a fiduciary duty to the Jessup Counter-Plaintiffs by virtue over its control over its financial accounts which it breached via alleged mismanagement. (Dkt. No. 5, ¶¶ 50-55, 58-59). Plaintiff's motion to dismiss the breach of fiduciary duty counterclaim is **DENIED**.

### 4. Breach of Contract

The Jessup Counter-Plaintiffs allege that Plaintiff breached the Funds Control Agreement "by failing to properly pay third parties as required by the contract." (*Id.*, ¶¶ 73-74). Arguing for dismissal of this counterclaim, Plaintiff highlights that that "[n]owhere do the Jessup Defendants allege (1) the contract's terms or parties' obligations under the Funds Control Agreement; (2) how Mobilization Funding allegedly violated the Funds Control

5

Agreement by paying some contractors, but not others; or (3) which of the contractors were paid, and which were not." (Dkt. No. 18 at 10-11). The Jessup Counter-Plaintiffs do not cite any provision of the contract they allege Plaintiff has breached nor specify which third parties were not paid pursuant to the contract. This is insufficient to provide Plaintiff with notice of the claim against it. The breach of contract counterclaim is **DISMISSED WITHOUT PREJUDICE.**

### B. Counterclaims of the GSH Counter-Plaintiffs

Plaintiff moves to dismiss four of the GSH Counter-Plaintiffs' claims: (1) breach of contract; (2) violation of SCUTPA; (3) breach of fiduciary duty; and (4) fraudulent concealment. The Court considers each claim in turn.

### 1. Breach of Contract

Plaintiff moves for dismissal of the breach of contract counterclaim on the basis that the GSH Counter-Plaintiffs have no right to enforce either the Rebuild Florida Subcontract or the Funds Control Agreement. (Dkt. No. 25 at 6). Per Plaintiff, the GSH Counter-Plaintiffs admit this in their Answer by defining the two relevant contracts—the Rebuild Florida Subcontract and the Funds Control Agreement—as contracts between Third-Party Defendant Westerfeld by Glick Construction ("WBGC") and Defendant Jessup Construction. (*Id.* at 6) (citing Dkt. No. 19, ¶¶ 5, 36, Ex. B). The GSH Counter-Plaintiffs contend they "are parties and/or intended beneficiaries of the various contractual agreements" which Plaintiff breached "by failing to pay GSH's properly submitted subcontractors' invoices, failing to pay GSH its share of the profits from the Rebuild Florida Subcontract, and failing to give GSH proper credit for payments made by Jessup against the MFII/Jessup Loan Agreement to which the [GSH] Parties are guarantors." (Dkt. No. 19, ¶ 83). In their Opposition to Plaintiff's Motion to Dismiss, they cite the Joint Venture Agreement between Jessup and GSH—and 50/50 split of the funds received for their work on the Rebuild

6

Florida Project, which were managed by Plaintiff pursuant to the Funds Control Agreement—as further evidence that GSH was an intended beneficiary of the Funds Control Agreement between Plaintiff and Defendant Jessup. (Dkt. No. 29 at 6-7).

At this stage, taking the GSH Counter-Plaintiffs' factual allegations as true, they have plausibly alleged a claim for breach of contract with regards to the Funds Control Agreement. The GSH Counter-Plaintiffs did not make any argument in their Opposition to Plaintiff's Motion to Dismiss with regards to any other breach of contract claim, and the Court understands the GSH Counter-Plaintiffs' claim to be limited to the Funds Control Agreement. (*See id.* at 8). Plaintiff's motion to dismiss the breach of contract counterclaim is **DENIED**.

### 2. SCUTPA

Plaintiff moves for dismissal of the GSH Counter-Plaintiffs' SCUTPA claim on the basis that they "have not, and cannot, plead the well-settled requirement that Mobilization Funding's acts have impacted the public interest." (Dkt. No. 25 at 8). It notes that "breach of commercial contract, without more, is not actionable under the UTPA" and argues that the GSH Counter-Plaintiffs' allegations "do not rise beyond the level of isolated commercial transactions" which "simply do not affect the public interest." (*Id.* at 9) (quoting *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert.*, Inc., 974 F.2d 502, 507-08 (4th Cir. 1992)). The GSH Counter-Plaintiffs include detailed allegations regarding the purported scheme undertaken by Plaintiff in their Answer and argue that Plaintiff's conduct has the potential for repetition where its "entire business revolves around deceiving and defrauding contractors such as GSH" by "taking control over a construction contract and over time, the funds due thereunder by requiring parties to agree to an unconscionable, unlawful, and fundamentally unfair contract." (Dkt. No. 19, ¶¶ 13-63; Dkt. No. 25 at 9).

7

At this stage, taking the GSH Counter-Plaintiffs' factual allegations as true, they have plausibly alleged a claim under the South Carolina Unfair Trade Practices Act. Plaintiff's motion to dismiss the SCUTPA counterclaim is **DENIED**.

### 3. Breach of Fiduciary Duty

Plaintiff moves to dismiss the GSH Counter-Plaintiffs' counterclaim of breach of fiduciary duty, arguing that no fiduciary relationship existed between the Parties. (Dkt. No. 25 at 9). Plaintiff highlights that the general contractor-construction lender relationship has not been recognized by South Carolina courts as fiduciary in nature and argues that no such relationship was created through the course of the Parties' dealings. (*Id.* at 10-11). The GSH Counter-Plaintiffs respond that "[b]y assuming control over those funds in the Funds Control Agreement, MFII voluntarily undertook a fiduciary relationship with respect to the Stokes Parties' interest in such funds" and "went far beyond any ordinary lender of funds to a contractor." (Dkt. No. 29 at 10) (citing Dkt. No. 19, ¶¶ 18-20, 43, 48-53).

At this stage, taking the GSH Counter-Plaintiffs' factual allegations as true, they have plausibly alleged a claim for breach of fiduciary duty. Plaintiff's motion to dismiss the breach of fiduciary counterclaim is **DENIED.**

### 4. Fraudulent Concealment

Plaintiff moves to dismiss the GSH Counter-Plaintiffs' counterclaim of fraudulent concealment, claiming that "the GSH Defendants have not, and cannot, plead that Mobilization Funding had a duty to disclose any of these alleged facts to them, in their capacity as guarantors under the Loan Documents." (Dkt. No. 25 at 12). Per Plaintiff, "[t]his is a commercial contract dispute between two sophisticated parties, not a situation where the GSH Defendants placed any special trust or confidence in Mobilization Funding, and certainly not a case where Mobilization

8

Funding accepted any such special trust or confidence." (*Id.* at 13). The GSH Counter-Plaintiffs reiterate that "MFII's conduct went far beyond just that of a simple lender of funds, and thereby . . . MFII owed the [GSH] Parties [the duty] to fully disclose what funds had been received from the Rebuild Florida Project and how such funds were being applied and accounted for." (Dkt. No. 29 at 12). They allege that Plaintiff withheld material information from the GSH Defendants regarding the funds and took affirmative steps to block them from discovering this information. (*Id.*) (citing Dkt. No. 19, ¶¶ 19-21, 35, 47-49, 53-61, 74-80).

At this stage, taking the GSH Counter-Plaintiffs' factual allegations as true, they have plausibly alleged a claim for fraudulent concealment. Plaintiff's motion to dismiss the fraudulent concealment counterclaim is **DENIED**.

### IV.    Conclusion

In light of the foregoing, Plaintiff's motion to dismiss the counterclaims of the Jessup Counter-Plaintiffs is **GRANTED IN PART AND DENIED IN PART**. (Dkt. No. 18). The Jessup Counter-Plaintiffs' counterclaims of negligence, interference with contractual relationship and breach of contract are **DISMISSED WITHOUT PREJUDICE**. The Court grants the Jessup Counter-Plaintiffs 14 days from the date of this Order to file an Amended Answer to cure its dismissed claims. Plaintiff's motion to dismiss the counterclaims of the GSH Counter-Plaintiffs is **DENIED.** (Dkt. No. 25).

**AND IT IS SO ORDERED.**

_s/ Richard M. Gergel
Richard Mark Gergel
United States District Judge

October 24, 2024
Charleston, South Carolina