# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### BEAUFORT DIVISION

| | |
|---|---|
| Mobilization Funding II, LLC,<br><br>       Plaintiff,<br>   v.<br><br>Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff, Barbara Stokes, Scott Stokes, GSH of Alabama, LLC,<br><br>       Defendants, | Case No. 9:24-cv-03592-RMG<br><br>**ORDER AND OPINION** |
| Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff,<br><br>       Counter-Plaintiffs,<br>   v.<br><br>Mobilization Funding II, LLC,<br><br>       Counter-Defendant, | |
| GSH of Alabama, LLC, Barbara Stokes, Scott Stokes,<br><br>       Counter-Plaintiffs,<br>   v.<br><br>Mobilization Funding II, LLC, Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff,<br><br>       Counter-Defendants, | |
| GSH of Alabama, LLC, Barbara Stokes, Scott Stokes,<br><br>       Third-Party Plaintiffs,<br>   v.<br><br>Westerfeld Construction by Glick, LLC,<br><br>       Third-Party Defendant. | |

Before the Court is Third-Party Defendant Westerfeld Construction by Glick, LLC ("Westerfeld")'s motion to dismiss Third-Party Plaintiffs' GSH of Alabama, LLC, Barbara Stokes and Scott Stokes ("GSH") claims against it for lack of personal jurisdiction. (Dkt. No. 34). GSH responded (Dkt. No. 41) and Westerfeld replied (Dkt. No. 44). Also before the Court is GSH's Motion to Strike the Supplemental Affidavit of Brandon Bey that Westerfeld filed in support of its reply brief. (Dkt. No. 45). Westerfeld responded in opposition to the motion to strike (Dkt. No. 48), and GSH replied (Dkt. No. 51). For the reasons set forth below, the Court grants Westerfeld's motion to dismiss, mooting the issue raised in GSH's motion to strike.

## I.     Background

In the underlying suit, Mobilization Funding II, LLC ("Mobilization") sued Jessup Construction, LLC ("Jessup") and its corporate and personal guarantors for defaulting under the Parties' commercial loan agreement. (Dkt. No. 1-1). Jessup and GSH raised various counterclaims in response to Mobilization's Complaint, which this Court addressed in an Order dated October 24, 2024. (Dkt. No. 46). In addition to its Counter-Complaint against Mobilization, GSH filed a Third-Party Complaint asserting various claims against Westerfeld, including negligence, fraudulent misrepresentation, fraudulent concealment, breach of contract, deceptive trade practices in violation of S.C. Code. § 39-5-20, interference with contractual relationship, breach of fiduciary duty, conversion and civil conspiracy. (*See generally* Dkt. No. 19). Westerfeld moves to dismiss GSH's Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that this Court lacks personal jurisdiction over it. (Dkt. No. 34).

In support of its Motion to Dismiss, Westerfeld submitted two affidavits by Brandon Bey, the Manager of Westerfeld. (Dkt. Nos. 34-2, 44-1). GSH moves to strike the Supplemental

Affidavit on the grounds that it violates Local Rule 7.07 by "raising previously unasserted matters" on reply that were not included in Westerfeld's initial motion. (Dkt. No. 45 at 5). Specifically, GSH complains that Bey contends in his Supplemental Affidavit that Westerfeld "never consented to the jurisdiction of South Carolina despite its participation in the contracts in South Carolina" and "Bey's first affidavit and [Westerfeld's] Motion to Dismiss did not make this claim of lack of consent." (*Id.* at 4).

The motions are ripe and ready for this Court's review.

## II.     Legal Standard

### A.  Third-Party Plaintiffs' Burden of Proof

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a party to assert by motion the defense of lack of personal jurisdiction. "The burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff." *Kuan Chen v. United States Sports Academy, Inc.*, 956 F.3d 45, 54 (1st Cir. 2020). When "[f]aced with a motion to dismiss for lack of personal jurisdiction, a district court may choose from among several methods for determining whether the plaintiff has met its burden." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy*, *Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) (internal quotation marks omitted). This choice is informed chiefly by the state of the record, the extent to which the merits of the underlying claim are intertwined with the jurisdictional issue, and the district court's assessment of whether it would be "unfair to force an out-of-state defendant to incur the expense and burden of a trial" without first requiring a substantial showing of the facts necessary to establish jurisdiction. *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145-46 (1st Cir. 1995) (internal quotation marks omitted). Of the choices available to the district court, "[t]he most common is the prima facie method." *Chouinard v. Marigot Beach Club and Dive Resort*, C/A No. 20-10863-MPK, 2021 WL 2256318,

at *1 (D. Mass. June 3, 2021) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 n.5 (1st Cir. 2016)).

Under the prima facie approach, typically used in the early stages of an action, "the district court acts not as a factfinder, but as a data collector." *Foster-Miller, Inc.*, 46 F.3d at 145. The district court's inquiry is whether the plaintiff "proffers evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robins*, 825 F.3d at 34. "To make such a showing, the plaintiff cannot rely solely on conclusory averments, but must adduce evidence of specific facts." *Kuan Chen*, 956 F.3d at 54 (internal quotation marks omitted). The district court "must accept the plaintiff's properly documented evidentiary proffers as true and give credence to the plaintiff's version of genuinely contested facts." *Baskin-Robins*, 825 F.3d at 34. But the district court must also consider undisputed facts proffered by the defendant that bear on jurisdiction. *See id.* The district court's dismissal of claims for lack of personal jurisdiction based on a prima facie record, rather than after an evidentiary hearing or factual findings, is reviewed de novo wherein the judgment may be affirmed "for any reason made evident by the record." *Id.*

On the other hand, if the district court determines that it would be unfair to the defendant to proceed with the litigation without first requiring the plaintiff to make more than a prima facie showing of jurisdiction, the preponderance-of-the-evidence standard comes into play. *See Foster-Miller, Inc.*, 46 F.3d at 145-46. Under that approach, the district court holds "a full-blown evidentiary hearing at which the court will adjudicate the jurisdictional issue definitively before the case reaches trial" using a preponderance-of-the-evidence standard. *Id.* at 146. Here, "[b]ecause neither party requested an evidentiary hearing and the district court did not conduct one, the district court use[s] the prima facie method to assess the jurisdictional question." *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018). "When

reviewing a district court's ruling on a motion to dismiss an action for failure to make a prima facie showing of personal jurisdiction over a defendant, the appellate court draws the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by the plaintiff as true and viewing disputed facts in the light most favorable to plaintiff." *Sawtelle v. Farrell*, 70 F.3d 1381, 1385 (1st Cir. 1995).

### B.  Standards to Exercise General Jurisdiction and Specific Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a party to assert by motion the defense of lack of personal jurisdiction. When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2), a plaintiff has "the burden of proving" that jurisdiction exists "by a preponderance of the evidence." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). "[W]hen, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *Id.*; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (noting that a plaintiff need only make a prima facie showing of jurisdiction when the court does not conduct an evidentiary hearing). In deciding whether a plaintiff has met this burden, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

A district court may assert personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state confers jurisdiction, and (2) the exercise of personal jurisdiction comports with constitutional due process. *Christian Sci. Bd. of Directors of First Church of Christ,*

*Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). The South Carolina long-arm statute "extend[s] to the outer limits of the due process clause." *Hidaria, USA, Inc. v. Delo, d.d.*, 783 S.E.2d 839, 542 (S.C. App. 2016); *see also* S.C. Code Ann. § 36-2-803(A). A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted).

Courts have recognized two types of personal jurisdiction: general and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court can assert general jurisdiction over a corporate entity only when the "continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Thus, general jurisdiction requires a showing that "the defendant's activities in the state" were "continuous and systematic." *Carefirst*, 334 F.3d at 397. Specific jurisdiction is designed to protect a defendant from having to litigate a suit in a forum where it should not have anticipated being sued. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277-78 (4th Cir. 2009). To determine if specific jurisdiction exists, the court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397. In analyzing the extent to which a defendant purposefully availed itself of the privilege of conducting activities within a State, a court examines "various non-exclusive factors" including:

6

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

.
*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020). In determining whether the exercise of personal jurisdiction over an out of state defendant is constitutionally reasonable, courts consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the interest of the states in furthering fundamental social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

### III.    Discussion

Westerfeld moves to dismiss GSH's Third-Party Complaint on the grounds that this Court lacks jurisdiction over it. (Dkt. No. 34). In support of its motion, Westerfeld highlights that it is a Florida-based general contractor that does not conduct business at all in South Carolina. (*Id.* at 3). Its activities relevant to this suit—its role as general contractor for the State of Florida Department of Economic Opportunity's Rebuild Florida Project, pursuant to which it retained Jessup as a subcontractor—are concentrated entirely within Florida. (*Id.*). Westerfeld has not entered into a contract with either the Third-Party Plaintiffs nor the Plaintiff who brought the

7

underlying suit. (*Id.*). Per Westerfeld, the GSH Parties "are relying on their agreements with [Mobilization] and their own incidental presence in South Carolina to provide the basis for specific jurisdiction over Westerfeld." (*Id.* at 7).

Of the numerous agreements underlying the present suit, five are relevant to understanding the jurisdictional theory advanced by GSH—that Westerfeld consented to this Court's jurisdiction via its participation in a Funds Control Agreement which is "explicitly an extension" of the commercial loan agreement between its subcontractor (Jessup) and a South Carolina based construction finance lender (Mobilization). (Dkt. No. 41 at 13). Westerfeld is a signatory to two contracts: (1) an agreement with the Florida Department of Economic Opportunity to serve as the general contractor on the Rebuild Florida Project (Dkt. No. 19-1), and (2) a subcontracting agreement with Jessup. (Dkt. No 19-2). Both of these contracts are governed by Florida law. (Dkt. No. 44 at 11 n.10). After Westerfeld retained Jessup as a subcontractor, Jessup entered into (1) a commercial loan agreement with Mobilization to finance its work on the project (Dkt. No. 19-4), (2) a Funds Control Agreement with Mobilization outlining the means by which Jessup would receive payment from Westerfeld and make loan repayments to Mobilization (Dkt. No. 19-10) and (3) a Joint Venture Agreement with GSH, an Alabama-based manufacturer of energy-efficient modular homes, outlining the division of labor and profits from the Parties' respective work on the Rebuild Florida Project. (Dkt. No. 19-3). The commercial loan agreement between Jessup and Mobilization is governed by South Carolina law. (Dkt. No. 19-4 at 13). Jessup's loan from Mobilization is secured by a corporate guaranty from GSH and personal guarantees by Barbara and Scott Stokes (on behalf of GSH) and Kimberly and Anthony Setliff (on behalf of

Jessup). (Dkt. Nos. 19-7, 19-8, 19-19; Dkt. No. 1-1 at 60-85). Jessup also pledged its subcontract with Westerfeld as collateral for the loan. (Dkt. No. 19-4 at 4).

GSH argues that Westerfeld is "a co-conspirator" that is "responsible for the acts and contracts formed by other conspirators to advance a fraud upon the [GSH] Parties." (Dkt. No. 41 at 3 n.1). While Westerfeld is not a signatory to the Funds Control Agreement, GSH contends that Westerfeld is subject to this Court's jurisdiction where (1) Westerfeld "knew Jessup pledged the Rebuild Florida Subcontract as collateral for the MFII/Jessup Loan Agreement;" (2) the Funds Control Agreement "confirms that it is a material term of the underlying loan documents governed by South Carolina law;" and (3) Westerfeld "sought and received a general release from any liability associated with their conduct arising from the Funds Control Agreement which necessarily would have to be construed in accordance with South Carolina law." (*Id.* at 10; Dkt. No. 19-10). In GSH's view, the Funds Control Agreement is "explicitly an extension of the [Mobilization]/Jessup Loan Agreement, which as the governing contract is governed by South Carolina law." (*Id.* at 13). GSH also contests the Bey Affidavit's claim that Westerfeld is not a party to any contract with GSH or Mobilization, highlighting that the Rebuild Florida Contract between Westerfeld and Jessup "explicitly recognized GSH as a subcontractor for the Rebuild Florida Project along with Jessup" and claiming that "it is obvious that [Westerfeld] is a party to the Funds Control Agreement along with [Mobilization] and Jessup (and GSH by virtue of the JV Agreement and the [Mobilization]/Jessup Loan Agreement to which the [GSH] Parties are guarantors)." (*Id.* at 12-13).

### A. General Jurisdiction

Westerfeld is not subject to the general jurisdiction of this Court. Westerfeld's Manager attested that Westerfeld:

> does not have a South Carolina office; is not licensed as a general contractor in South Carolina; is not registered to do business in South Carolina via the South Carolina Secretary of State; does not maintain an agent in South Carolina; does not have any South Carolina employees; does not solicit business in South Carolina; does not own bank accounts or property in South Carolina; does not otherwise transact business or provide services to individuals in South Carolina; and has never deliberately engaged in significant or long-term business activities within South Carolina.

(Dkt. No. 34-2 at 2-3). GSH does not cite any evidence that Westerfeld's activities in South Carolina are so continuous and systematic as to be subject to general jurisdiction in the state. *See Carefirst*, 334 F.3d at 397. In fact, GSH points to no activities by Westerfeld in South Carolina at all. The Court proceeds to examine GSH's arguments in support of specific jurisdiction.

### B. Specific Jurisdiction

GSH urges this Court to connect the dots across a web of agreements in order to make the necessary jurisdictional link between South Carolina and Westerfeld based on contracts entered into by its subcontractor—specifically, the Funds Control Agreement between Jessup and Mobilization. (Dkt. No. 41 at 5-6). Through this Agreement, GSH contends that Westerfeld "voluntarily undertook control over funds for which it had no right by way of an unlawful contract in South Carolina" and "came within the jurisdiction of this Court." (*Id.* at 13-14). GSH argues this is evidenced by the fact that the Funds Control Agreement indemnifies Westerfeld from any claim arising from its distribution of the funds in accordance with the Agreement. (*Id.*). Per GSH,

"[i]f [Westerfeld] were not a party to the Funds Control Agreement, as claimed by Bey, then there simply would be no reason for [Westerfeld] to be released from any liability." (*Id.* at 13).

Westerfeld is not a signatory to the Funds Control Agreement. (Dkt. No. 19-10). The Agreement explicitly provides that it is an agreement between Jessup and Mobilization. (*Id.* at 2). Westerfeld explains that the Funds Control Agreement "fails to extend any rights, duties, or benefits to Westerfeld beyond those already existing under the Jessup Subcontract" and "simply instructs where monies earned under the Jessup Subcontract, if any, would be deposited, and none of the deposits by Westerfeld would be held or performed in the State of South Carolina." (Dkt. No. 41 at 12-13). The Jessup Subcontract provides that Westerfeld is to direct payments received by the Department of Economic Opportunity to Jessup at specified intervals via electronic transfer. (Dkt. No. 44 at 12) (citing Dkt. No. 19-2 at Art. 10). The Funds Control Agreement outlines the specifics of this payment structure, providing that Westerfeld, upon receiving payment from the Florida Department of Economic Opportunity, is to direct funds owed to Jessup into one of two accounts at Valley National Bank, from which Mobilization may debit loan payments due by Jessup to Mobilization. (Dkt. No. 19-10). The Agreement also authorizes Westerfeld to "direct the disbursement of funds from the Jessup Prime Account for the payment of Jessup's project related costs pursuant to the Contract" "subject to approval by Mobilization." (*Id.*).

At its core, the question before this Court is whether Westerfeld is subject to the jurisdiction of this Court by virtue of its control over the disbursement of funds to its subcontractor, such funds being subject to additional obligations imposed by contracts entered into by its subcontractor with Mobilization, a South Carolina entity. This Court finds that it is not. As the United States Supreme Court has held, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to

11

justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 417 (1984). That Jessup and Mobilization entered into an agreement by which to structure Jessup's loan repayment obligations does not extend jurisdiction over Westerfeld due to the mere fact that Westerfeld is the contractor from whom the funds owed to Jessup, its subcontractor, originate and eventually are paid to Mobilization, a South Carolina entity. Nor does the fact that the Funds Control Agreement grants indemnity obligations to Jessup in favor of Westerfeld, which again reflects unilateral activity by Jessup. GSH offers no evidence to support its conclusory allegation that Westerfeld is "responsible for the acts and contracts formed by other conspirators to advance a fraud upon the [GSH] Parties," and falls far short of the prima facie showing necessary to defeat Westerfeld's Rule 12(b)(2) motion.

The Court determines based on its own review of the record that Westerfeld did not consent to jurisdiction in South Carolina, and GSH's motion to strike is rendered moot.

### IV.  Conclusion

In light of the foregoing, the Court **GRANTS** Westerfeld's motion to dismiss. GSH's Motion to Strike is **MOOT**.

**AND IT IS SO ORDERED.**

                                      s/ Richard M. Gergel
                                      Richard Mark Gergel
                                      United States District Judge

November 13, 2024
Charleston, South Carolina