**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Mobilization Funding II, LLC,<br><br>               Plaintiff,<br>   v.<br><br>Jessup Construction, LLC, Anthony Setliff,<br>Kimberly Setliff, Barbara Stokes, Scott<br>Stokes, GSH of Alabama, LLC,<br><br>               Defendants, | Case No. 9:24-cv-03592-RMG<br><br><br>**ORDER AND OPINION** |
| GSH of Alabama, LLC, Barbara Stokes,<br>Scott Stokes,<br><br>               Counter-Plaintiffs,<br>   v.<br><br>Mobilization Funding II, LLC, Jessup<br>Construction, LLC, Anthony Setliff,<br>Kimberly Setliff,<br><br>               Counter-Defendants, | |
| GSH of Alabama, LLC, Barbara Stokes,<br>Scott Stokes,<br><br>               Third-Party Plaintiffs,<br>   v.<br><br>Talem Capital, LLC, Brandon Bey, Scott<br>Peper, and Does 1 Through 20, being those<br>persons or entities whose true identifies are<br>not presently known but who are liable for<br>the acts and/or conduct complained of<br>herein and will be substituted once they<br>have been identified,<br><br>               Third-Party Defendants. | |

1

Before the Court is Third-Party Defendant Scott Peper's motion to dismiss (Dkt. No. 89). For the reasons stated below, the Court grants the motion.

## I.    Background[1]

Third-Party Plaintiffs are Barbara Stokes, Scott Stokes, and GSH of Alabama, LLC (the "Stokes Parties"). GSH is an Alabama limited liability company with its principal place of business in Huntsville, Alabama. (Dkt. No. 78 ¶ 1). The Stokes are BSH's only members and Barbara is the managing member. (*Id.* ¶ 2).

Mobilization Funding II, LLC is a South Carolina limited liability company with its principal place of business in Tampa, Florida. (*Id*. ¶ 3). Third-Party Defendant Peper is MFII's Chief Executive Officer. (*Id.* ¶ 5). He is a Florida resident. (*Id.*).

Westerfeld Construction by Glick, LLC is a Florida contractor. (*Id.* ¶ 6). Third-Party Defendant Brandon Bey is Westerfeld's owner and manager. (*Id.*). By prior order, the Court dismissed the Stokes Parties' claims against Westerfeld for lack of personal jurisdiction. (Dkt. No. 55 at 11) ("At its core, the question before this Court is whether Westerfeld is subject to the jurisdiction of this Court by virtue of its control over the disbursement of funds to its subcontractor, such funds being subject to additional obligations imposed by contracts entered into by its subcontractor with Mobilization, a South Carolina entity. This Court finds that it is not.").

Westerfeld contracted with Counter-Defendant Jessup Construction, LLC on the Rebuild Florida Contract. *See* (Dkt. No. 78 ¶ 40) (noting GSH's role was "explicitly recognized" therein). Then, Jessup entered into a loan agreement with MFII, which both Barbara and Scott personally guaranteed. (*Id.* ¶ 45) ("MFII and Jessup entered the MFII/Jessup Loan Agreement"). "MFII, by

---

[1] Facts are drawn from Counter-Plaintiffs Seconded Amended Counterclaims, Cross-Claims and Third-Party Complaint ("SAC"). (Dkt. No. 78).

and through Peper, . . . intended to use [the loan, however] to steal the funds from the Rebuild Florida Project." (*Id.* ¶ 46). Further, MFII concealed the fact that it had to borrow money for the above noted loan because it "did not have sufficient funding on its own to fund the MFII/Jessup Loan Agreement since inception." (*Id.* ¶ 59). In sum, "such funds have gone directly to MFII, Peper, Bey, Jessup [and others] . . . rather than being properly applied to payments towards the MFII/Jessup Loan Agreement, reimbursement of proper expenses related to the Rebuild Florida Subcontract and payment of profits due to GSH." (*Id.* ¶ 68).

MFII sued, inter alia, the Stokes and GSH for defaulting on the loan agreement. Later, the Stokes Parties filed the instant SAC.

Peper moves to dismiss the SAC's claims against him and the Stokes Parties oppose. (Dkt. Nos. 89, 115, 129). Peper's motion is ripe for disposition.

## II.     Legal Standard

Rule 12(b) (2) of the Federal Rules of Civil Procedure is applicable to motions to dismiss for lack of personal jurisdiction. "When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists." *Tetrev v. Pride Int'l, Inc.,* 465 F.Supp.2d 555, 558 (D.S.C. 2006). When a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). To determine whether a plaintiff has satisfied this burden, the court may consider both defendant's and plaintiff's "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences [,] resolving all factual disputes in his favor," and "assuming [plaintiff's] credibility." *Masselli & Lane, PC v. Miller & Schuh, PA,* No. 99–2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000); *Mylan Labs.,*

2 F.3d at 62; *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). This court, however, need not "credit conclusory allegations or draw farfetched inferences." *Massellli,* 2000 WL 691100, at *1 (quoting *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir. 1994)). Plaintiff must also base his claim for personal jurisdiction "on specific facts set forth in the record." *Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.,* 784 F. Supp. 306, 310 (D.S.C. 1992). Personal jurisdiction over an out-of-state defendant may be either general or specific.

A court may exercise specific jurisdiction when "the out of state defendant engage[s] in some activity purposely aimed toward the forum state and ... the cause of action arise[s] directly from that activity." *ESAB Group, Inc. v. Centricut, LLC,* 34 F.Supp.2d 323, 331–32 (D.S.C.1999); *see* S.C. Code Ann. § 36–2–803. Minimal, isolated or unsolicited contacts, however, do not give rise to the required purposeful connection between an out of state defendant and the forum state. *Umbro USA, Inc. v. Goner,* 825 F. Supp. 738, 741 (D.S.C.1993).

### III.  Discussion

The question is whether this Court has specific jurisdiction over Peper. *See* (Dkt. No. 115 at 12) (arguing only for specific jurisdiction). The Stokes Parties' theory of personal jurisdiction is that Peper conspired and collaborated with MFII (a South Carolina limited liability company). (*Id.* at 13).  The Stokes Parties' theory is that, because Peper conspired with MFII to steal money from the Stokes Parties, he purposely availed himself of MFII's being a South Carolina corporation.  (*Id.* at 17) (arguing that as a conspirator, Peper's presence in South Carolina is established via his connection to MFII).

"To succeed on this theory, the plaintiffs would have to make a plausible claim (1) that a conspiracy existed; (2) that [Peper] participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with [South Carolina] to subject

4

that conspirator to jurisdiction in [South Carolina]." *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013).

That said, "A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 5th Cir. 1952)). The immunity granted to agents is not "destroyed because the agents are sued individually." *Id.* at 1252. Rather, a plaintiff must show that the corporate employee has "an independent personal stake in achieving the corporation's illegal objective." *Id.* (quoting *Nelson Radio*, 496 F.2d at 399); *ePlus Tech., Inc. v. Aboud*, 3313 F.3d 166, 179 (4th Cir. 2002) (The "personal stake exception" applies "only where a co-conspirator possesses a personal stake independent of his relationship to the corporation."). Also, "*unauthorized* acts [of an employee] in furtherance of the conspiracy may state a claim." *Buschi*, 775 F.2d at 1252–53 (citation omitted). "Thus, while authorized acts of official would constitute corporation action, (and hence avoid a conspiracy charge), unauthorized acts would not." *Id.* at 1253.

The Stokes Parties argue that Peper had a personal stake in achieving MFII's illegal objective. *See* (Dkt. No. 115 at 14–15). Looking at those portions of the SAC that the Stokes Parties cite, (SAC, ¶¶ 63, 66–67), they allege that (1) Peper conspired with, inter alia, MFII, to steal the Rebuild Florida Project funds and that Peper "reappropriated and stole such payments received from the Rebuild Florida Project for" his own benefit, "in addition to using such funds to pay back monies borrowed to fund the MFII/Jessup Loan Agreement"; and (2) MFII sold the loan at issue to third-party defendant Talem Capital, LLC, a Florida limited liability corporation of which Peper is a member, and that said sale was a "sham transaction designed to . . . perpetuate the fraud committed." As to this second point, in the "Loan Purchase and Sale Agreement, Talem

5

expressly disclaimed and did not assume any liabilities related to the claims brought by the Stokes Parties in the litigation at bar." Thus, the Stokes Parties conclude, by virtue of said agreement, "Peper, by way of MFII, attempted to avoid liability for collaborating and conspiring with MFII . . . ." (*Id.* ¶ 67). *But see* (*id.* ¶ 48) (alleging the MFII/Jessup Loan Agreement already included a "complete waiver of all claims and defenses by Jessup and each of its guarantors").

The Court grants Peper's motion to dismiss. The SAC's allegations, stripped of the Stokes Parties' wordsmithing, show Peper merely acted in his authorized capacity as CEO of MFII. *See, e.g.*, (*id.* ¶ 46) (alleging "MFII, *by and through* Peper . . . intended to use [the loan] to steal the funds from the Rebuild Florida Project") (emphasis added). Said differently, the Stokes Parties ask the Court to hold that because Peper was MFII's CEO, he *necessarily* had a personal stake independent of MFII's actions. Such a holding would swallow the general rule. In sum, the Stokes Parties' allegations as to Peper's personal stake are non-specific and conclusory, do not show a "personal stake independent of his relationship to the corporation," and cannot overcome the intracorporate immunity doctrine.

To the extent that the Stokes Parties allege that MFII's sale of the loan to Talem procured Peper a personal benefit—a means of "avoid[ing] liability for collaborating and conspiring with MFII"—the Court finds that the allegation is conclusory. The Loan Purchase and Sale Agreement is between Talem and MFII. (Dkt. No. 78-10 at 2). And while said agreement allows Talem to assume MFII's rights under the Funds Control Agreement without assumingly liabilities related to the Stokes Parties' claims in the instant litigation, the Stokes Parties never explain in non-conclusory, concrete terms, how this sale "perpetuated the fraud" and in turn benefited Peper—especially given the MFII/Jessup Loan Agreement already included a "complete waiver of all claims and defenses" by each guarantor. *See* (Dkt. No. 78 ¶¶ 48, 67).

Further, the Stokes Parties' conspiracy allegations as to Peper personally lack particularity and fail to state a claim. *See Unspam*, 716 F.3d at 329 (noting that, to satisfy the conspiracy theory of jurisdiction, the party must allege with particularity the conspiracy and over acts within the forum taken in furtherance of the conspiracy"). The Stokes Parties' allegations generally describe Peper acting as MFII's agent—nothing more.

To conclude, the intracorporate immunity doctrine bars the Stokes Parties' claims against Peper so that the SAC cannot state a claim against him. Further, the Stokes Parties' conspiracy allegations against Peper are conclusory. The SAC's claims against Peper therefore are subject to dismissal.

### IV.     Conclusion

For the above reasons, the Court **GRANTS** Peper's motion to dismiss. (Dkt. No. 89).

**AND IT IS SO ORDERED.**

       s/ Richard M. Gergel
Richard Mark Gergel
United States District Judge

October 22, 2025
Charleston, South Carolina