# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Mobilization Funding II, LLC,<br><br>    Plaintiff,<br>  v.<br><br>Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff, Barbara Stokes, Scott Stokes, GSH of Alabama, LLC,<br><br>    Defendants, | Case No. 9:24-cv-03592-RMG<br><br>**ORDER AND OPINION** |
| GSH of Alabama, LLC, Barbara Stokes, Scott Stokes,<br><br>    Counter-Plaintiffs,<br>  v.<br><br>Mobilization Funding II, LLC, Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff,<br><br>    Counter-Defendants, | |
| GSH of Alabama, LLC, Barbara Stokes, Scott Stokes,<br><br>    Third-Party Plaintiffs,<br>  v.<br><br>Talem Capital, LLC, Brandon Bey, Scott Peper, and Does 1 Through 20, being those persons or entities whose true identifies are not presently known but who are liable for the acts and/or conduct complained of herein and will be substituted once they have been identified,<br><br>    Third-Party Defendants. | |

1

Before the Court is Third-Party Defendant Talem Capital, LLC's motion to dismiss (Dkt. No. 92). For the reasons stated below, the Court grants the motion.

I.     **Background**[1]

Third-Party Plaintiffs are Barbara Stokes, Scott Stokes, and GSH of Alabama, LLC (the "Stokes Parties"). GSH is an Alabama limited liability company with its principal place of business in Huntsville, Alabama. (Dkt. No. 78 ¶ 1). The Stokes are BSH's only members and Barbara is the managing member. (*Id.* ¶ 2).

Mobilization Funding II, LLC is a South Carolina limited liability company with its principal place of business in Tampa, Florida. (*Id.* ¶ 3). Third-Party Defendant Peper is MFII's Chief Executive Officer. (*Id.* ¶ 5). He is a Florida resident. (*Id.*).

Westerfeld Construction by Glick, LLC is a Florida contractor. (*Id.* ¶ 6). Third-Party Defendant Brandon Bey is Westerfeld's owner and manager. (*Id.*). By prior order, the Court dismissed the Stokes Parties' claims against Westerfeld for lack of personal jurisdiction. (Dkt. No. 55 at 11).

Westerfeld contracted with Counter-Defendant Jessup Construction, LLC on the Rebuild Florida Contract. *See* (Dkt. No. 78 ¶ 40) (noting GSH's role was "explicitly recognized" therein). Then, Jessup entered into a loan agreement with MFII, which both Barbara and Scott personally guaranteed. (*Id.* ¶ 45) ("MFII and Jessup entered the MFII/Jessup Loan Agreement"). "MFII, by and through Peper, and in collaboration and in conspiracy with Bey and unnamed co-conspirator, WCBG, and Does 1 through 20, intended to use [the loan, however] to steal the funds from the Rebuild Florida Project." (*Id.* ¶ 46). Further, MFII concealed the fact that it had to borrow money

---

[1] Facts are drawn from Counter-Plaintiffs' Second Amended Counterclaims, Cross-Claims and Third-Party Complaint ("SAC"). (Dkt. No. 78).

2

for the above noted loan because it "did not have sufficient funding on its own to fund the MFII/Jessup Loan Agreement since inception." (*Id.* ¶ 59). In sum, "such funds have gone directly to MFII, Peper, Bey, Jessup, A. Setliff and K. Setliff, and/or other unnamed co-conspirators, WCBG and Schweitzer, as well as Does 1 through 20, rather than being properly applied to payments towards the MFII/Jessup Loan Agreement, reimbursement of proper expenses related to the Rebuild Florida Subcontract and payment of profits due to GSH." (*Id.* ¶ 68).

As it concerns Talem Capital, LLC, the complaint states that Talem is a Florida limited liability company with its principal place of business in Tampa, Florida. (*Id.* ¶ 4). Peper is a member and unnamed co-conspirator Todd Schweitzer is the manager. (*Id.*).

On December 27, 2024, during the pendency of this litigation, Talem purchased the MFII/Jessup Loan Agreement. (*Id.*). In the purchase documents, "Talem expressly disclaimed and did not assume any liabilities related to the claims brought by the Stokes Parties in the litigation at bar." (*Id.* ¶ 66). "The Loan Purchase and Sale Agreement appears to be merely a sham transaction designed to further perpetuate the fraud committed by Peper, Bey, MFII, unnamed co-conspirators, [and others] . . . ." (*Id.* ¶ 67). "The sham nature of Talem is demonstrated by the fact that Peper and unnamed co-conspirator, Schweitzer, are the members of MFII, as well as the members of Talem. . . . Peper, by way of MFII, attempted to avoid liability for collaborating and conspiring with MFII, Bey, unnamed co-conspirator, WCBG, as well as the other unnamed co-conspirators, including Schweitzer and Does 1 through 20. Such agreement is nothing more than a continuation of such parties' ongoing fraud against the Stokes Parties and as such, such sham transaction should be completely disregarded except as[] to its evidentiary value in showing the existence and continuation of the fraud alleged herein." (*Id.*).

MFII sued, inter alia, the Stokes and GSH for defaulting on the loan agreement. Later, the Stokes Parties filed the instant SAC.

The Stokes Parties bring claims against Talem for (1) Deceptive Trade Practices; (2) Interference with Contractual Relationship; (3) Breach of Fiduciary Duty; (4) Conversion; (5) Civil Conspiracy; (6) Unjust Enrichment; and (7) Breach of Implied Covenant of Good Faith and Fair Dealing.

Talem moves to dismiss the SAC's claims against it and the Stokes Parties oppose. (Dkt. Nos. 92, 124, 137). Talem's motion is ripe for disposition.

## II.     Legal Standard

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citation omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." (citation and punctuation omitted)). To be legally sufficient, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the [pleader]." *Id*. (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

### III.    Discussion

For the reasons outlined below, the Court grants Talem's motion to dismiss.

On a general level, the SAC fails to state any claim against Talem because it is devoid of substantive allegations against Talem. The SAC alleges Talem purchased the MFII/Jessup Loan Agreement, that through the sale documents Talem disclaimed and did not assume liabilities related to the Stokes Parties' claims in this litigation, and that the loan's sale thus "perpetuated the fraud" because Peper and Schweitzer are members of both Talem and MFII and said sale allowed Peper to "avoid liability for collaborating and conspiring with MFII" and others. (Dkt. No. 78 ¶¶ 66, 67). These allegations lack specific factual matter and are best qualified as conclusory statements and labels disconnected from the various claims the Stokes Parties purport to bring against Talem. For this reason alone, Talem's motion must be granted.

Next, the Stokes Parties likely lack Article III standing to challenge the assignment of the MFII/Jessup Loan Agreement to Talem. *See Davis v. BSI Fin. Servs., Inc.*, 633 F. App'x 837, 838 (4th Cir. 2016) ("Davis also seeks to invalidate the assignment of the note to BSI because, he claimed, it had been mechanically signed, or robo-signed. Regardless of the truth of this assertion, Davis was not a party to the assignment and fails to demonstrate either that he has standing to challenge the assignment or that robo-signing renders the assignment void."). The Stokes Parties were not parties to the MFII/Jessup Loan Agreement and cannot challenge its conveyance. *Wolf v. Fed. Nat. Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) ("Notably, Wolf has not alleged that she is a party to the assignment from MERS to BAC or that she is an intended beneficiary of the assignment. Without an enforceable contract right, Wolf lacks standing to attack the validity of the assignment. Furthermore, the assignment does not affect Wolf's rights or duties at all. Wolf still has the obligation under the note to make payments. In fact, the only thing the assignment affects

is to whom Wolf makes the payments. Thus, she has no interest in the assignment from MERS to BAC. Accordingly, she has no standing to challenge it.").[2] Accordingly, for this separate reason, Talem's motion should be granted.

Further, and independent of the above, the Stokes Parties fail to state any claim against Talem.

**South Carolina Unfair Trade Practices Act**

A plaintiff seeking to maintain an unfair trade practices claim under SCUTPA must establish: (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest. *Bessinger v. Food Lion, Inc.,* 305 F.Supp.2d 574, 579 (D.S.C.2003), *aff'd,* 115 Fed. Appx. 636 (4th Cir. 2004).

Here, the Stokes Parties plead no facts as to any element. For example, the allegation that MFII's sale of the loan agreement to Talem was solely made to perpetuate a fraud is entirely conclusory because it lacks any detail or explanation of this alleged "fraud." Nor have the Stokes

---

[2] In opposing Talem's motion to dismiss, the Stokes Parties argue that South Carolina's fraudulent conveyance statute, S.C. Code Ann. § 27-23-10(A), allows the Stokes Parties to attack MFII's sale of the loan agreement to Talem. (Dkt. No. 124 at 11–15). But the Stokes Parties all but admit they never pled such a claim in the SAC. (*Id.* n.2) (admitting the "Stokes Parties have not asserted a separate cause of action under Section 27-23-10" but contending "the Statute is context for their current claims"). Put simply, no fraudulent conveyance claim is properly before the Court. *See Reese v. S.C. Dep't of Mental Health*, No. CV 3:16-3491-JFA-PJG, 2018 WL 4957403, at *3 (D.S.C. June 27, 2018), *report and recommendation adopted,* No. CV 3:16-3491-JFA, 2018 WL 4677714 (D.S.C. Sept. 28, 2018), *aff'd*, 764 F. App'x 293 (4th Cir. 2019) ("To the extent Reese may be attempting to raise additional claims in his response in opposition which were not presented in the Complaint, such claims are not properly before the court.").

Parties alleged plausibly any damage from this sale or shown an adverse impact on the public interest. *See Bahringer v. ADT Sec. Servs., Inc.*, 942 F. Supp. 2d 585, 594 (D.S.C. 2013) ("A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for repetition."); *Id.* (noting "[t]he potential for repetition is generally demonstrated in one of two ways: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts"— something the Stokes Parties do not do here). Accordingly, the Court grants Talem's motion on this point.

### Interference with Contractual Relationship

"To establish a cause of action for tortious interference with contractual relations, a plaintiff must show: 1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages." *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 642 S.E.2d 726, 731 (S.C. 2007). The Stokes Parties allege that Talem interfered with GSH's JV agreement with Jessup to procure its breach and the breach of other agreements GSH had with unnamed contractors. (Dkt. No. 78 ¶¶ 99–100).

The Court grants Talem's motion on this point. The Stokes Parties' allegations are conclusory and devoid of detail on this count—lacking any explanation of how Talem actually procured the JV agreement's breach. Said differently, the Stokes Parties do little more than recite the elements of this claim, which does not suffice.

### Breach of Fiduciary Duty

To establish a claim for breach of fiduciary duty, a plaintiff must prove: "(1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages

7

proximately resulting from the wrongful conduct of the defendant." *Scott v. Catawba Valley Brewing Co.*, No. 2:18-CV-1539-RMG, 2018 WL 3966261, at *3 (D.S.C. Aug. 17, 2018).

The Stokes Parties allege that under "the Loan Documents, the Funds Control Agreement, the Rebuild Florida Subcontract, and the JV Agreement . . . Talem" owes a fiduciary duty to GSH. (Dkt. No. 78 ¶ 103).

The Court grants Talem's motion on this claim. The SAC does not allege with any detail how Talem breached any fiduciary duty nor even what such duties consisted off. To this point, the Stokes Parties are unable in their briefing to argue, with any detail, which provisions of the various agreements cited above Talem breached. *See* (Dkt. No. 124 at 24–27) (admitting "the Stokes Parties and Talem are not . . . parties to a shared contract" but arguing that Talem "assumed the 'superior position' of a fiduciary"). The SAC's allegations as to a fiduciary duty are inadequate, and this claim must be dismissed.

**Conversion**

To recover in an action for conversion, the plaintiffs must prove: (1) an interest by the plaintiff in the thing converted; (2) the defendants converted the property to their own use; and (3) the use was without the plaintiffs' permission. *May v. Peninger*, No. 2:07-CV-00864CWH, 2008 WL 509470, at *12 (D.S.C. Feb. 22, 2008); *Coxe v. Gov't Pers. Mut. Life Ins. Co.*, No. 3:23-CV-389-SAL, 2023 WL 11885972, at *12 (D.S.C. Aug. 17, 2023) ("Conversion is defined as an unauthorized assumption and exercise of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights.").

The Stokes Parties allege GSH should have been reimbursed $320,000 for its subcontractor expenses but that various parties, including Talem, have control of the funds from the Rebuild

Florida Project and have refused to pay GSH its due, resulting in conversion. (Dkt. No. 78 ¶¶ 118–120).

The Court grants Talem's motion on this point. As noted above, the SAC contains only conclusory allegations of wrongdoing by Talem, never explaining concretely how Talem exercised unauthorized control over funds belonging to the Stokes Parties. *See, e.g.*, (*id.* ¶ 119) (grouping "MFII, Peper, Bey, Talem, Jessup, A. Setliff, K. Setliff, and Does 1 through 20" and alleging that "they have control over the funds . . . [and] have refused to pay GSH the amounts it is rightfully owed"); *Coxe*, 2023 WL 11885972, at *12 (dismissing conversion claim where various defendants noted "the lack of allegations about their own actions in connection with this claim"). In sum, the SAC's conversion claim is not adequately pled.

**Civil Conspiracy**

"The elements of a civil conspiracy in South Carolina are (1) the combination of two or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special damages." *Mason v. Mason*, 412 S.C. 28, 61, 770 S.E.2d 405, 422 (Ct. App. 2015).

The Stokes Parties allege on this count that "MFII, Peper, Bey, Talem, Jessup, A. Setliff and Does 1 through 20" conspired to lure the Stokes Parties into guaranteeing the loan related to the Rebuild Florida Project. (Dkt. No. 78 ¶ 53).

The Court dismisses the Stokes Parties' civil conspiracy claim against Talem. As noted above, the SAC contains no specific, nonconclusory allegations as to Talem's actions toward the Stokes Parties, much less allegations sufficient to show a civil conspiracy to which Talem was a party. Further, Talem is alleged to have purchased the loan agreement at issue *during* the pendency of this litigation (December 27, 2024). And there is no plausible allegation as to how this action

induced the Stokes Parties to guarantee the loan in question *years earlier* (around December 16, 2021).

### Unjust Enrichment

"Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 678 S.E.2d 430, 434 (2009). To succeed on an unjust enrichment claim, a plaintiff must prove: "(1) [a] benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 532 S.E.2d 868, 872 (2000).

The Stokes Parties allege that through the "various acts and omissions of MFII, Peper, Bey, Talem, Jessup, A. Setliff, K. Setliff and Does 1 through 20" said parties engaged in a conspiracy to retain the benefits of the "Loan Documents, including the Guaranty Agreements . . . and the JV Agreement." (Dkt. No. 78 ¶¶ 131–32).

The Court grants Talem's motion on this point. As noted already, beyond alleging Talem's purchase of the MFII/Jessup Loan Agreement was fraudulent, the SAC is devoid of nonconclusory allegations explaining how Talem's purchase of the MFII/Jessup Loan Agreement unjustly enriched Talem. Accordingly, Court grants Talem's motion on this point.

### Breach of Implied Covenant of Good Faith and Fair Dealing

"[T]here exists in every contract an implied covenant of good faith and fair dealing." *TRB Mellichamp LLC v. Concrete Supply Co., LLC*, No. CV 2:20-4413-RMG, 2021 WL 6206582, at *3 (D.S.C. Mar. 5, 2021). "Which is why, in South Carolina, 'the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of

contract.' " *Id.* (citing *RoTec Servs., Inc. v. Encompass Servs, Inc.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004) (affirming trial court's dismissal on summary judgment of counterclaims for breach of contract and breach of implied covenant of good faith and fair dealing)). "Rather, [the implied covenant of good faith and fair dealing] is subsumed under the claim for breach of contract." *In & Out Welders, Inc. v. Sunbelt Rentals, Inc.*, No. 7:16-cv-4021-MGL, 2017 WL 2255780, at *3 (D.S.C. May 23, 2017). In other words, the implied covenant of good faith and fair dealing is "another term of the contract." *TRB Mellichamp*, 2021 WL 6206582, at *3.

The Court grants Talem's motion on this final point. The SAC alleges no nonconclusory allegations against Talem as to a breach of contract, and thus no breach of the implied covenant of good faith. *See* (Dkt. No. 78 ¶¶ 135–36) (alleging the Stokes Parties performed all obligations under the "Loan Documents, the Guaranty Agreements . . . and the JV Agreement" but only that the acts and omissions of "MFII, Peper, Bey, Talem, Jessup, A. Setliff, K. Setliff and Does 1 through 20 . . . unfairly frustrated and prevented the Stokes Parties from receiving any benefits" from the above agreements).

### IV.    Conclusion

For the above reasons, the Court **GRANTS** Talem's motion to dismiss. (Dkt. No. 92).

**AND IT IS SO ORDERED.**

_s/Richard M. Gergel_
Richard Mark Gergel
United States District Judge

October 28, 2025
Charleston, South Carolina