# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Mobilization Funding II, LLC, | Case No. 9:24-cv-03592-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff, Barbara Stokes, Scott Stokes, GSH of Alabama, LLC, | |
| Defendants, | |
| GSH of Alabama, LLC, Barbara Stokes, Scott Stokes, | |
| Counter-Plaintiffs, | |
| v. | |
| Mobilization Funding II, LLC, Jessup Construction, LLC, Anthony Setliff, Kimberly Setliff, | |
| Counter-Defendants, | |
| GSH of Alabama, LLC, Barbara Stokes, Scott Stokes, | |
| Third-Party Plaintiffs, | |
| v. | |
| Talem Capital, LLC, Brandon Bey, Scott Peper, and Does 1 Through 20, being those persons or entities whose true identifies are not presently known but who are liable for the acts and/or conduct complained of herein and will be substituted once they have been identified, | |
| Third-Party Defendants. | |

Before the Court are motions to quash transferred to this court from the United States District Court for the Middle District of Florida related to the instant case. Case No. 9:25-mc-801-RMG, (Dkt. Nos. 1, 3, 8). Defendant GSH of Alabama, LLC opposes the motions. Case No. 9:25-mc-801-RMG, (Dkt. Nos. 10, 28). For the reasons stated below, the Court grants in part and denies in part the motion to quash.

**I.      Background**

GSH served subpoenas on nonparties Valley National Bancorp d/b/a Valley Bank, Jessup 2.2 Equity, LLC, and RMC Property Group, L.L.C. Various parties moved to quash, and those motions were transferred to this Court.

At issue in this case is a loan Mobilization Funding II, LLC made to Jessup Construction, LLC, which Barbara and Scott Stokes guaranteed. GSH, Barbara Stokes, and Scott Stokes (the "Stokes Parties") allege in their Second Amended Counterclaims, Crossclaims, and Third-Party Complaint ("SAC") that MFII and others conspired to induce the Stokes into guaranteeing the loan, which related to the Rebuild Florida Project. The Stokes Parties allege that when MFII received money from the State of Florida, instead of applying the money to the loan, MFII and others stole it, and never reimbursed GSH for its subcontracting work.

By prior order, the Court dismissed all parties against which the Stokes Parties lodged third-party claims in the SAC. (Dkt. Nos. 139, 142, 143) (dismissing Peper, Bey, and Talem).

On December 29, 2025, the United States Court of Appeals for the Fourth Circuit affirmed by unanimous published opinion this Court's dismissal of Westerfeld Construction by Glick, LLC for lack of personal jurisdiction. (Dkt. No. 154).

Previously, the Court granted a motion to quash regarding nonparty Altriarch Asset Management, LLC. (Dkt. No. 146). The Court rejected GSH's contention that its case was about

"following the money." (*Id.* at 5).  Instead, the Court noted that GSH's case concerned the allegation that "MFII and others failed to pay it subcontracting payments and that MFII conspired to achieve this end." (*Id.* at 5-6) (noting Court had "dismissed the entirety of GSH's third-party claims").

      As to Altriarch, the Court reasoned that:

> How money "flowed" from various non-parties (many of which have been dismissed from this action) to Altriarch and then, potentially, to MFII to fund the Jessup loan—a loan which was paid—is irrelevant to GSH's claim of nonpayment of subcontracting payments, regardless of GSH's buzzword loaded arguments to the contrary. *See, e.g.*, (*id.* at 9) ("[U]nderstanding the flow of funds to and from MFII is critical to the Stokes Parties' investigation . . . as well as to rebutting MFII's assertions . . . that the Stokes Parties' guarantees were valid, binding, voluntarily, and knowingly executed").

(*Id.* at 5-6).

      Before the Court now are various motions to quash subpoenas that GSH issued.

      First, various parties including MFII and nonparty Jessup 2.2 move to quash GSH's subpoena to "Valley National Bancorp d/b/a Valley Bank." 9:25-mc-801-RMG, (Dkt. No. 1). GSH seeks all corporate documents of Valley Bank related to nineteen parties and non-parties. (Dkt. No. 1 at 18-20) (seeking, for example, documents related to dismissed third-party defendants such as Scott Peper, Brandon Bey, and Talem Capital, and MFII and nonparty Jessup 2.2).

      Second, nonparty Jessup 2.2 Equity, LLC moved to quash GSH's subpoena to it. 9:25-mc-801-RMG, (Dkt. No. 3 at 36-43) (five requests with roughly 33 subparts related to at least 18 entities and individuals).  GSH seeks all documents from Jessup 2.2 related not only to MFII, but dismissed third-party defendants such as Talem, Peper, and Bey. Jessup 2.2's relation to MFII was to provide some of the funds MFII used in the loan it provided to Jessup. (*Id.* at 23).

3

Last, nonparty RMC Property Group, L.L.C., filed a motion to quash GSH's subpoena. 9:25-mc-801-RMG, (Dkt. No. 8) (four requests with roughly 92 enumerated subparts related to 19 entities and individuals). RMC is a real estate firm in Tampa, Florida, and is "not . . . an investor in or member of [MFII], and it did not underwrite, fund or service [the] Loan." (*Id*. at 8-9). No allegations exist in GSH's operative complaint against RMC.

GSH opposes the motions to quash.

As to Valley Bank, 9:25-mc-801-RMG, (Dkt. No. 10), GSH first argues that movants do not have standing to quash its subpoena. (*Id.* at 41-42). Then, GSH argues that information related to the accounts ending in 5850 and 4170 are relevant to this litigation. (*Id.* at 43-44).

Account 5850 appears to be the account into which the Florida Department of Economic Opportunity paid Westerfeld. (*Id.* at 44-45) (arguing this is the account from which funds were transferred to the Jessup Prime Account and that without "discovery of the flow of funds into the Westerfeld Account . . . the Stokes Parties are only able to view a partial and incomplete picture of the flow of the funds"). As to account 4170, GSH states that "funds from the Rebuild Florida Project made its way into this account." (*Id.* at 44).

As to Jessup 2.2, GSH states that MFII produced spreadsheets that "evidence the payment of money from Jessup 2.2 and amounts owed to Jessup 2.2 in relation to the underlying transactions referenced in the Litigation." (*Id.* 45-46) (noting Jessus 2.2 loaned money to MFII).

As to RMC's motion to quash, GSH reiterates that this is a "follow the money" case. 9:25-mc-801-RMG. (Dkt. No. 28 at 23). Discussing its since dismissed conspiracy claim, GSH argues that MFII and its co-conspirators stole funds and that "RMC may have played some role in such conduct." (*Id.*); (*Id.* at 27-28) (noting that "RMC and its owners . . . sent emails to MFII and [Westerfeld] authorizing the payment of monies to MFII and [Westerfeld] in the course of events

4

addressed in the Litigation" and that "RMC personnel . . . created and revised spreadsheets apparently used by MFII in connection with the MFII/Jessup Loan Agreement," likely calculations of profitability in relation to the loan, "presumably in connection with RMC providing funding for such loan").

Movants' motions are fully briefed and ripe for disposition.

**II.     Legal Standard**

Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26. *Cook v. Howard,* No. 11–1601, 2012 WL 3634451, at *6 (4th Cir. Aug. 24, 2012) (per curiam) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed[,] ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26."); *see also Barrington v. Mortage IT, Inc.,* No. 07–61304–CIV, 2007 WL 4370647, at *3 (S.D.Fla. Dec. 10, 2007) (collecting cases). Thus, regardless of whether the Court considers Movants' Motion under Rule 45 or Rule 26, the Court must review GSH's subpoenas duces tecum under the relevancy standards set forth in Rule 26(b).

Rule 26(b) limits the scope of discovery to those materials that are "relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Relevant information need not be admissible at trial, but it must appear to be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Notably, the court "must limit the frequency or extent of discovery" if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id.* at 26(b)(2)(C). As such, the court may quash a subpoena duces tecum as overbroad if it "does not limit the [documents] requested to those

5

containing subject matter relevant to the underlying action." *In re Subpoena Duces Tecum to AOL, LLC,* 550 F.Supp.2d 606, 612 (E.D.Va.2008); *see also Sirpal v. Wang,* No. WDQ–12–0365, 2012 WL 2880565, at *5 (D.Md. July 12, 2012). Further, the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the disclosure or discovery of the material at issue. Fed.R.Civ.P. 26(c)(1). Likewise, Rule 45(c)(3) requires the court to quash a subpoena that "subjects a person to an undue burden." Fed.R.Civ.P. 45(c)(3); *see also Cook,* 2012 WL 3634451, at *6 n. 7. This undue burden category "encompasses situations where the subpoena seeks information irrelevant to the case." *Cook,* 2012 WL 3634451, at *6 n. 7. Moreover, "[a] subpoena imposes an undue burden on a party when [it] is overbroad." *In re Subpoena Duces Tecum.,* 550 F.Supp.2d at 612

The burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted. *See Finley v. Trent,* 955 F.Supp. 642, 648 (N.D.W.Va.1997) (citing *Castle v. Jallah,* 142 F.R.D. 618, 620 (E.D.Va.1992)).

Further, before reaching the merits of a motion to quash, the court must first determine whether the moving party has standing to challenge the subpoena. *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) (citation omitted). Though parties generally "do not have standing to challenge a subpoena issued to a nonparty," they may do so if they assert "some personal right or privilege in the information sought by the subpoena." *Id.* (citing *United States v. Idema*, 118 Fed. Appx. 740, 744 (4th Cir. 2005)). If the court determines that a party has standing, the court must, on motion, "quash or modify the subpoena if it requires disclosure of privileged or other protected matter ..." Fed. R. Civ. P. 45(d)(2)(3)(iii).

Courts recognize that individuals have standing to challenge subpoenas for the disclosure of certain personal records, "even where that information is maintained by a third party." *See, e.g.*,

*Clark v. Johnson*, No. 14-cv-582-JED-PJC, 2015 WL 4694045, at *1 (N.D. Okla. Aug. 6, 2015) (listing cases and noting that such records include bank records, mental health or medical records, and employment records); *Tarashuk v. Orangeburg County*, 2022 WL 473231, at *3 (D.S.C. Feb. 15, 2022).

### III.  Discussion

The Court begins with the subpoena directed at Valley Bank. 9:25-mc-801-RMG, (Dkt. No. 1).

Movants' personal financial records are contained within the requested records, and they have standing.  So, the Court rejects GSH's opposition on this point.  *See also Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012) ("Additionally, the Court notes that plaintiffs have standing to challenge subpoenas duces tecum as irrelevant and overbroad under Rule 26, regardless of whether they have standing to bring a motion to quash under Rule 45.").

**As to the bank accounts ending in 5850 and 4170, the Court DENIES the motion to quash.**  These accounts appear to concern the Funds Control Agreement, (Dkt. No. 78-12), and appear relevant to GSH's operative claims and defenses.

**The Court otherwise GRANTS the motion to quash.**  The remaining information GSH requests from Valley Bank parallels that which GSH requested from Altriarch and for which the Court quashed GSH's subpoena by prior order. (Dkt. No. 146 at 2); (*Id*. at 5-6) (noting that how money may have "flowed" from "various non-parties (many of which have been dismissed from this action) to [other non-parties] and then, potentially, to MFII to fund the Jessup loan—a loan which was paid—is irrelevant to GSH's claim of nonpayment of subcontracting payments, regardless of GSH's buzzword loaded arguments to the contrary").

7

In sum, as detailed above, the motion to quash the subpoena directed at Valley Bank is granted in part and denied in part.

**As to Jessup 2.2, the Court GRANTS the motion.** 9:25-mc-801-RMG, (Dkt. No. 3). Information related how to MFII funded the loan is irrelevant to this litigation. *See* (Dkt. No. 146 at 5-6).

**Last, as to RMC, the Court GRANTS the motion**. 9:25-mc-801-RMG, (Dkt. No. 8). As noted already, how MFII funded the loan at issue is irrelevant to GSH's claims and defenses.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** the motion to quash as to Valley Bank. 9:25-mc-801-RMG, (Dkt. No. 1). The motion is denied as to accounts 5850 and 4170 but is otherwise granted. The Court further **GRANTS** the motions to quash as to Jessup 2.2 and RMC. 9:25-mc-801-RMG, (Dkt. Nos. 3 and 8).

**AND IT IS SO ORDERED.**

    s/ Richard M. Gergel
Richard Mark Gergel
United States District Judge

January 7, 2026
Charleston, South Carolina